NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **AL-QUAADIR GREEN,** | : | |
| | : | |
| **Petitioner,** | : | **Civil No. 12-6148 (ES)** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **CHARLES E. WARREN, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

**SALAS, DISTRICT JUDGE**

Petitioner Al-Quaadir Green ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Charles E. Warren and Jeffrey S. Chiesa. For the reasons stated herein, the petition will be denied.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will simply reproduce the recitation of facts as set forth by Superior Court of New Jersey, Appellate Division on direct appeal:

> On the evening of May 18, 2001, Christian Made, Juana Ozuna, Sofia Rodriguez, Sofia's sister Roseanna Rodriguez and Marisol Rosario went to a club in Jersey City. They stayed until closing time and Made drove the group home, as he had driven them to the club. He took the exit from Route 280 and at the bottom of the ramp, pulled his car over. Several witnesses said he did so because Ozuna was ill

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

from drinking too much. They all got out of the car. Roseanna Rodriguez lived approximately two blocks away, and she decided to walk home. Another car pulled up, with three occupants. The driver and rear-seat passenger were male, the front-seat passenger was female; all were African-American. The driver asked if everything was all right, and the group said yes. Marisol Rosario noticed the rear-seat passenger lean forward and whisper something to the driver, and she immediately sensed trouble and told Sofia Rodriguez they should leave. As she said this, she saw the man sitting in the rear passenger seat get out of the car, holding a small black gun. She walked quickly across the street and hid in a stairwell.

Sofia Rodriguez got into the driver's seat of their car and told Ozuna and Made they had to leave. She saw one of the two males from the other car strike Made, who got into the passenger seat next to Rodriguez and said they were being robbed.

One of the robbers was standing next to Sofia Rodriguez, who was in the driver's seat. Rodriguez gave her pocketbook to the assailant and realized he had a gun. He then reached across her into the car and took the keys from the ignition. He then shot her in the head and she passed out.

Marisol Rosario, who was hiding across the street, heard several shots. When she heard the other car drive away, she ran to a cousin's house, which was nearby. When Sofia Rodriguez regained consciousness, Made was leaning on her; he had been shot in the right temple. Ozuna was lying on the street, in a pool of blood. Sofia Rodriguez ran to the same house as had Marisol Rosario, saying she had been shot.

Later that morning, Newark police gave Marisol Rodriguez a series of books containing mug shots of African-American males and African-American females. After looking through them, she did not see anyone she could identify.

Police and emergency personnel responded to the scene. Four .380 caliber shell casings and a projectile fragment were recovered from the front passenger seat of the victims' car. These shell casings matched casings and a bullet fragment recovered approximately two weeks earlier from the scene of a May 6 shooting at 611 Martin Luther King Boulevard. Testing revealed that the bullets recovered at the autopsies of Ozuna and Made were fired from the same gun that had been used in the earlier shooting.

Latique Mayse was the victim of the May 6 shooting, and he was

interviewed by Detective Vincent Vitiello of the Newark Police Department.   Detective Vitiello testified that Mayse gave a statement in which he said he was "absolutely certain" that defendant was the person who had shot him. Mayse identified defendant as the shooter in a photo array and also identified Omar Auston as a person who was with defendant at the time of the shooting.

At defendant's trial, Mayse denied that defendant shot him on May 6, and said that he could not remember giving a statement to that effect and could not remember selecting defendant's picture. Mayse was then confronted with testimony he had given to a grand jury, in which he had said he met defendant on the street on May 6 and that defendant had a silver and black .380 caliber gun. Mayse had also told the grand jury that the earlier statement he had given to Detective Vitiello was accurate.   In response, Mayse said he did not recall that testimony and that the grand jury transcript was inaccurate.

Investigator Robert Harris of the Essex County Prosecutor's Office learned of the ballistics match between the May 6 shooting and the killings of Made and Ozuna and that Mayse had identified defendant as the May 6 shooter.   Based upon that, he prepared separate photo arrays including defendant's picture and Auston's picture and showed them to Sofia Rodriguez and Marisol Rosario. Neither could make any identification although Rosario indicated one picture might be that of the driver of the car.

Several weeks later, defendant and Omar Auston were arrested in New York City.   Defendant had a .380 caliber gun and Auston a 9 millimeter at the time of their arrests.   Ballistics tests linked that .380 caliber gun to the May 6 and May 19 shootings.   Harris learned of these arrests and presented to Sofia Rodriguez and Marisol Rosario photo arrays that had been compiled by New York police. Rodriguez selected defendant's picture as the man who had shot her, and Rosario selected Auston's picture as the driver of the car.   Defendant and Auston were arrested and charged with the May 19 shootings.

*State v. Green*, 2008 WL 3067920, at *1-3 (N.J. Super. Ct. App. Div. Aug. 7, 2008).

After a jury trial, Petitioner was convicted of the following: two counts of murder, N.J.S.A. 2C:11-3(a)(1) or (2); two counts of felony murder, N.J.S.A. 2C:11-3(a)(3); one count of attempted murder, N.J.S.A. 2C:5-1, 11-3; four counts of robbery while armed, N.J.S.A. 2C:15-1; one count of conspiracy to commit robbery, N.J.S.A. 2C:5-2, 15-1; one count of aggravated assault, N.J.S.A.

2C:12-1(b)(2); one count of unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and one count of possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). *Id.* The state court sentenced Petitioner to two consecutive life terms, each with a thirty-year period of parole ineligibility. *Id.* On appeal, the Appellate Division affirmed the conviction and sentence, *id.*, and the New Jersey Supreme Court denied certification, *State v. Green*, 960 A.2d 396 (N.J. 2008).

Petitioner filed a petition for post-conviction relief ("PCR") on December 18, 2008 and after oral argument, the trial court denied the petition on October 5, 2009. *State v. Green*, 2012 WL 75113, at * 2 (N.J. Super. Ct. App. Div. Jan. 11, 2012). The Appellate Division affirmed the decision. *Id.* On July 10, 2012, the New Jersey Supreme Court denied certification. *State v. Green*, C-1110 (N.J. 2012).

On September 10, 2012, Petitioner filed the instant habeas petition. (D.E. No. 1 ("Pet.")). In response to this Court's notice pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), (D.E. No. 3), Petitioner filed a motion to stay the petition. (D.E. No. 6). Respondents filed a response to the request for a stay, (D.E. No. 12), and an answer to the petition. (D.E. No. 15). Petitioner filed a reply regarding the stay, (D.E. No. 18), and a reply to Respondents' answer to the petition. (D.E. No. 20). While his habeas petition has been pending before this Court, Petitioner filed a second PCR petition in state court, which was denied on May 29, 2013. (D.E. No. 16-8, Resp'ts' Br., Ex. 20, 2nd PCR Order, May 29, 2013).

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

. . .

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.* A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[2] If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quoting *Williams* at 410). As the Supreme Court explains,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398.

**B. Analysis**

**1. Evidentiary Issues (Grounds One, Two, Seven, Eight, Eleven, Twelve)**

In his first and twelfth grounds for relief, Petitioner argues that "the admission of other-crimes or wrongs evidence that Defendant was involved in a prior shooting is unconstitutional." (Pet. 9). Specifically, Petitioner challenges the admission of testimony regarding the shooting of Mr. Mayse. (*Id.*). This issue was raised before the Appellate Division on direct appeal and rejected:

> In defendant's first point, he contends the trial court erred in its admission of testimony with respect to the May 6 shooting. This testimony, he asserts, was evidence of other wrongs within the meaning of N.J.R.E. 404(b) and should not have been admitted

against him.

At the time of defendant's trial, N.J.R.E. 404(b) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

The rule is intended to protect a defendant against the possibility that a jury might convict him merely because it considered him to be a "bad person." *State v. Ramseur*, 106 N.J. 123, 265 (1987). Evidence that a defendant has committed other crimes, wrongs or acts cannot be received to prove that a defendant has a propensity to commit crime and thus is more likely to be guilty of the offense charged. *State v. Reddish*, 181 N.J. 553, 608 (2004); *State v. Stevens*, 115 N.J. 289, 300 (1989).

Such evidence is not completely barred, however. It may be received to prove other facts in issue, provided it is necessary to prove an issue that is genuinely disputed, *State v. Fortin*, 162 N.J. 517, 529 (2000); *Stevens*, *supra*, 115 N.J. at 300-01, and provided that it meets the four-part test set down by the Supreme Court in *State v. Cofield*, 127 N.J. 328, 338 (1992). The evidence must (1) be relevant to a material issue; (2) be similar in kind and reasonably close in time to the offense charged; (3) be clear and convincing; and (4) have probative value that is not outweighed by its prejudicial effect.

Generally, the prosecution must establish these four factors in a hearing conducted under N.J.R.E. 104. Finally, if the trial court concludes after such a hearing that the evidence should be admitted, the trial court must explain to the jury the limited manner in which it may consider that evidence. This instruction "should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." *Cofield*, *supra*, 127 N.J. at 341 (quoting *Stevens*, *supra*, 115 N.J. at 304). An essential aspect of such an instruction is to tell the jury that it may not draw any inferences from that evidence that the defendant

has a propensity to commit criminal acts.   *Reddish*, *supra*, 181 N.J. at 611.

Here, the trial court fully complied with this procedure.   It conducted a N.J.R.E. 104 hearing at which both Detective Vitiello and Mayse testified.   It then proceeded to analyze the testimony presented at that hearing in terms of the four-prong *Cofield* test.   It found the evidence relevant to a material question, the identity of the shooter on May 19.   It also found that the evidence involved an incident reasonably close in time and of a similar nature.   As to the requirement that proof of the prior bad act be clear and convincing, the trial court cited Mayse's testimony before the grand jury and his signed statement, in both of which he identified defendant as the man who shot him on May 6.   Finally, recognizing the potential for prejudice, the trial court ruled that the evidence should be sanitized. Thus the trial court ruled that the State could only present evidence to the effect that Mayse had witnessed defendant fire the gun on May 6 and that Mayse had been shot on May 6. The State could not present evidence to the effect that defendant had shot Mayse.

Defendant's principal argument on appeal is that the trial court erred in the manner in which it ordered the testimony with respect to the May 6 shooting sanitized. Defendant contends that the trial court should have, *sua sponte*, limited the evidence to testimony that defendant had possession of the gun on May 6 but should have precluded evidence that defendant fired it on May 6.

We agree with the State that in the particular context of this matter, such a restriction would not have achieved any noticeable benefit for defendant. The State's evidence linking defendant with the May 6 incident and the May 19 incident was ballistics evidence, based upon an analysis of the empty shells recovered from the scene of each shooting. Such empty shells are left only if the weapon has been fired, discharging a bullet. It had to be inescapably clear to the jury that the May 6 incident involved a shooting; if it did not, there would have been no shells to recover and analyze.

*Green*, 2008 WL 3067920, at *4-5.

In Ground Two of the Petition, Petitioner argues that "the admission of testimony regarding a letter purportedly written by Defendant . . . is unconstitutional."   (Pet. 9).   The Appellate Division rejected this claim on direct appeal:

In October 2002, while defendant remained in jail awaiting trial, the prosecutor's office, in connection with an entirely unrelated matter, conducted a search of an apartment at 717 Martin Luther King Boulevard occupied by Narique Wilson. The search uncovered a letter addressed to Wilson. The envelope bore defendant's name, inmate number and cell number and the address of the Essex County Jail. The jury heard the following redacted version of the letter:

> Little Bro, when me and O was home we made some bad moves. This is where I need your help. That little bitch Ky is telling on me. If you got love for me, push her. That's the only person that's stopped me from coming home. Do that, Dog, I want to come home. Al.

According to the record, the word "push" means "kill" in street vernacular.
. . .

The defendant's second argument revolves around the trial court receiving into evidence the letter recovered in October 2002 in the course of a search of the apartment of Narique Wilson. We see no error in the court's handling of the matter.

The trial court conducted a pre-trial hearing to determine whether the letter, either in whole or in part, would be admissible. Based upon the testimony presented at the hearing, the trial court noted the various items of circumstantial evidence linking defendant to the letter: the return address on the letter matched defendant's address in jail; Narique Wilson was an acquaintance of defendant's; there was nothing which would support an inference that the letter was an attempt to frame defendant and the letter itself contained textual links to defendant. These circumstantial pieces constituted sufficient authentication under N.J.R.E. 901.

At trial, the trial court carefully charged the jurors that it was up to them to determine whether defendant wrote the letter and whether the contents of the letter bore upon defendant's guilt in these shootings. "[E]vidence of . . . post-crime threats made against a witness . . . demonstrated a consciousness of guilt" and were thus properly admitted into evidence. *State v. Williams*, 190 N.J. 114, 125 (2007) (citing *State v. Rechtschaffer*, 70 N.J. 395, 413-15 (1976)).

*Green*, 2008 WL 3067920, at *3-6.

In Ground Seven of the Petition, Petitioner argues that "the trial judge abused her discretion in admitting the testimony of Louis Alarcon (firearms examiner) which failed to comport with admissibility standards." (Pet. 11). Petitioner alleges that the trial court failed to make a finding as to the reliability of the firearms examination methodology. (*Id.*). In Ground Eight of the Petition, Petitioner argues that his "confrontation rights" were violated when Mr. Alarcon was "permitted to present hearsay testimony pertaining to a firearms examination conducted by Firearm's Unit of New York City." (*Id.*). The Appellate Division found both of these arguments to be unpersuasive.

> Defendant's first argument in his pro se brief deals with the trial court's admission of expert ballistic testimony by Detective Louis Alarcon of the Newark Police Department. Detective Alarcon examined the shell casings and fragments recovered from the scenes of the May 6 and May 19 shootings and concluded that all were fired from the same weapon, a .380 caliber handgun. Detective Alarcon testified that he examined shell casings and bullets that were forwarded to him from the New York City Police Department following defendant's arrest in New York City while in possession of a .380 caliber handgun. Those casings and bullets were obtained when New York police fired the weapon in their own ballistics lab.

> Although he made no objection to this testimony below, defendant now contends that it deprived him of a fair trial. Not having interposed an objection below, defendant must establish that the trial court committed plain error in receiving this testimony. R. 2:10-2. We are satisfied that defendant cannot reach this standard.

> We perceive defendant's argument with respect to this testimony to have two prongs: that the trial court did not require the State to demonstrate the scientific reliability of ballistics testing in accordance with the procedures noted in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed.2d 469 (1993), and that Detective Alarcon did not personally fire the weapon recovered in New York City but relied upon exemplars supplied by the New York police. Neither, in our judgment, supplies any basis upon which to reverse defendant's convictions.

As to the first prong, we concur with the State that it rests upon a misapprehension of the legal principles governing the admission of expert testimony in criminal matters in New Jersey. The Supreme Court has carefully noted that in criminal matters, our courts continue to apply *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923); *State v. Chun*, 194 N.J. 54, 91 (2008); *State v. Harvey*, 151 N.J. 117, 169 (1997).

As to the second prong, defendant made no challenge below to the authenticity of the shells and casings he received from New York. Indeed, the trial court, in the course of its charge, read a stipulation the parties had entered, that the New York Police Department handed over to the Newark police the sample bullets and shell casings they retrieved during the course of standard ballistic testing.

The second point defendant raises in his pro se brief also challenges the testimony of Detective Alarcon, but on a different basis. Defendant complains that the fact that Alarcon received the exemplars from New York made his testimony hearsay, in violation of his right of confrontation. *Washington v. Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed.2d 177 (2004).

Defendant's argument misapprehends the meaning of hearsay. Detective Alarcon's testimony rested upon his own microscopic examination of the casings and bullets. He did not testify as to the opinions and conclusions of others; he testified only as to the conclusions and opinions he himself reached after performing his own examination and analysis. Hearsay was not implicated in his testimony.

*Green*, 2008 WL 3067920, at *7.

In Ground Eleven, Petitioner contends that it was an abuse of discretion which violated his constitutional rights when the trial court failed to conduct a competency hearing of witness Kysheal Ivery, when Ms. Ivery stated that she was currently under the influence of drugs. (Pet. 13). On direct appeal, the state court denied relief on this claim:

Defendant's next argument in his pro se brief relates to the testimony of Kysheal Ivery. We noted earlier in our opinion that when Ms. Ivery appeared at defendant's trial, she said that she had been high on drugs when she testified against Mr. Auston and was high at the time

of the shootings and as she testified at defendant's trial. Defendant contends that his conviction should be reversed because the trial court did not undertake an examination of the witness outside of the presence of the jury to determine her capacity to testify.

Defense counsel requested the trial court to conduct such a hearing but the trial court refused to do so, saying, "I have no intention of doing it. Looking at the woman she's stone cold sober. She can say what she wants to say. The jury can see whether she's impaired, they have a right to decide whether she's impaired." Based upon the trial court's observations and comment, we can perceive no abuse of discretion on the part of the trial court.

*Green*, 2008 WL 3067920, at *10.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 680 (1990)). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Estelle*, 502 U.S. at 70 ("[T]he Due Process Clause guarantees fundamental elements of fairness in a criminal trial.") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Here, the state courts have determined that there were no evidentiary errors under state law and the evidentiary decisions challenged here did not deprive Petitioner of a fundamentally fair trial. The admission of the testimony about the May 6th shooting was relevant to the crimes at issue in Petitioner's trial and the state court took steps to ensure that only certain aspects of the incident could be introduced. With regard to the letter, the trial court examined the issue in great

detail and the admission of the letter did not deprive Petitioner of due process.   The trial court's

admission of Mr. Alarcon's testimony was proper and clearly did not deprive Petitioner of a fair

trial.   Nor did the admission of his testimony constitute hearsay or otherwise violate any of his

constitutional rights.   With regard to Ms. Ivery, the state trial judge properly determined that she

was competent to testify and that the jury was free to evaluate her credibility.   The decisions of the

state courts are neither contrary to, nor an unreasonable application of, Supreme Court law and

Petitioner is not entitled to relief on these claims.

## 2.   Jury Instruction Issues (Grounds Three and Four)

In Ground Three of the Petition, Petitioner alleges that "the trial courts [sic] failure to

provide an adequate jury instruction regarding a witness's prior inconsistent statement is

unconstitutional."   (Pet. 10).   Plaintiff argues that the trial court failed to properly instruct the

jury regarding the usage of Ms. Ivery's prior inconsistent testimony.   (*Id.*).   The Appellate

Division rejected this argument:

> Defendant's next argument revolves around the manner in which
> the trial court handled the testimony of Ms. Ivery, specifically its
> instruction on how to weigh a prior inconsistent statement.
>
> We noted earlier that when the prosecution called Ms. Ivery as a
> witness, she said she could not recall any of the events of May 19,
> 2001. She had testified several months earlier at the trial of Omar
> Auston about the shootings; at defendant's trial, she maintained that
> she could not remember testifying at the Auston trial. Based upon
> that, the prosecution confronted her with her testimony at that
> earlier trial. The trial court did not conduct a *Gross* hearing, *State v.
> Gross*, 121 N.J. 1 (1990), but defendant recognizes that there was no
> need to do so with respect to her earlier trial testimony since it had
> been given under oath. N.J.R.E. 803(a)(1).
>
> During the course of her testimony, she was also confronted with
> the statement she gave to the police on January 29, 2002, in which
> she detailed the events of May 19. Defendant complains on appeal
> that the trial court erred in permitting this to occur without having

first conducted a *Gross* hearing specifically directed to this statement. This, defendant asserts, entitles him to a new trial.

We disagree. Defendant's argument overlooks the fact that it was defense counsel who confronted Ms. Ivery with this statement, not the prosecution.

Defendant also complains that the trial court in its charge did not outline to the jury the various *Gross* factors in explaining how to use this prior inconsistent statement. We have reviewed the trial court's charge and find its discussion of assessing the credibility of the various witnesses entirely adequate.

*Green*, 2008 WL 3067920, at *7.

In Ground Four, Petitioner alleges that "the trial court's failure to provide a 'False in one. False in all' charge is unconstitutional." (Pet. 10). The Appellate Division found this challenge to be without merit:

During the charge conference, defense counsel requested that the trial court give to the jury a "false in one, false in all" charge with respect to the testimony of Mayse and Ivery. The trial court declined to give such a charge, noting, for example, that the jury could conclude that Mayse was untruthful in his testimony in this case but yet had been truthful in his testimony to the grand jury. Similarly, the jury could conclude that Ivery had been truthful in her testimony in the earlier trial but not truthful before this jury.

We have reviewed the trial court's charge in its entirety. The court carefully outlined for the jury at several junctures the appropriate factors to consider when weighing the credibility of the various witnesses it had heard. The court gave detailed instructions on the task of assessing the credibility of specific witnesses such as Ivery and Mayse. There was no error.

*Green*, 2008 WL 3067920, at *7.

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Middleton v. McNeil*, 541 U.S. 433, 437

15

(2004); *see also Estelle*, 502 U.S. at 71–72 (internal citations and quotation marks omitted).   A petitioner's burden is "especially heavy" when the claim involves a failure to give an instruction as "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."   *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *see also Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (noting that due process is violated when "the instruction contained some ambiguity, inconsistency, or deficiency," and "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.") (internal quotation marks omitted).

In this case, it is clear that the jury instructions were proper.   The instructions did not improperly lift the burden of proving any element of the offense nor did the instructions in any way infect the trial.   As properly stated by the Appellate Division, the trial court outlined for the jury the appropriate factors to consider when weighing the credibility of the witnesses it had heard and also gave detailed instructions on assessing the credibility of specific witnesses such as Ivery and Mayse.   Accordingly, this Court finds that the decisions of the state court were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were the state court decisions based upon an unreasonable determination of the facts in light of the evidence presented to it.   Petitioner is not entitled to relief on these claims.

**3.   Sentence (Ground Seven)**

In his seventh ground for relief, Petitioner argues that the consecutive life terms with a sixty year parole disqualifier that he received are unconstitutional.   (Pet. 11).   The Appellate Division denied relief on this claim, stating that:

> [Petitioner] also complains that the trial court failed to give a
> statement of reasons in support of its decision to impose cumulative
> sentences.   While it is true that the trial court did not explicitly

> address the question, we can perceive no justification to remand this matter. Two individuals lost their lives on May 19; a concurrent sentence would have denigrated that reality. *State v. Molina*, 168 N.J. 436 (2001).

*Green*, 2008 WL 3067920, at *7.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 62, 67. "[T]he Eighth Amendment, which forbids cruel and unusual punishments, does contain a narrow proportionality principle that applies to noncapital sentences. And although this narrow proportionality principle applies to sentences for terms of years, only an extraordinary case will result in a constitutional violation." *Martinez v. Stridiron*, --- F. App'x ----, 2013 WL 4767892, at * 5 (3d Cir. Sept. 6, 2013) (internal citations and quotation marks omitted).

This Court finds that Petitioner's challenge to the state court's imposition of consecutive life terms is not reviewable in this Court as he has presented no cogent argument why his sentence is unconstitutional in this regard. This Court finds that Petitioner's sentence is not grossly disproportionate to the crimes he committed. As stated by the Appellate Division, two separate individuals were killed and as such, the two separate terms are appropriate and within the guidelines. Therefore, even if the Court were to read an Eighth Amendment argument into Petitioner's claims, it would not state a violation of federal constitutional limitations.

This Court concludes that the decisions of the sentencing court and of the Appellate Division were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to relief on this ground.

## 4. Photo Lineup (Ground Nine)

In his ninth ground for relief, Petitioner alleges that the police used a non-sequential photo array lineup from the New York police when they interviewed Ms. Rodriguez about the incident. (Pet. 12). Petitioner alleges that the procedure used was "impermissibly suggestive" and was contrary to the New Jersey Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures. (*Id.*). Petitioner also objects to Ms. Angela Arias, a cousin of Ms. Rodriguez, serving as Ms. Rodriguez's interpreter during the interview and identification. (*Id.*).

The Appellate Division denied relief on these grounds:

> Defendant next challenges the trial court's rulings following a *Wade* hearing. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). We find no substantive merits to defendant's arguments. The trial court conducted an extensive hearing into the identification procedures followed by the Newark police and the Essex County Prosecutor's Office. After that hearing concluded, and counsel had the opportunity to argue their respective positions, the trial court did not place its decision immediately upon the record.
>
> Rather, it took and carefully reviewed all of the exhibits marked at the time of the hearing. Later, it placed an extensive opinion on the record, setting forth its reasons for concluding that there was no impermissible suggestibility in the identification procedures that were followed. In the course of its opinion, the trial court made specific references to the particular exhibits that were used in the course of the identification procedure and why those exhibits supported its conclusions. We have no basis to reject the trial court's conclusions in this regard. *State v. Locurto*, 157 N.J. 463,

> 472 (1999).  The Attorney General Guidelines for Preparing and
> Conducting Photo and Live Lineup Identification Procedures, set
> forth in *State v. Herrera*, 187 N.J. 493, 511-20 (2006), to which
> defendant refers in his brief, were not in force and effect at the time.
>
> Defendant challenges another aspect of the identification procedure.
> When Sofia Rodriguez was shown the array prepared by the New
> York Police Department and then gave a formal statement, her
> cousin, Angela Arias, served as the interpreter.  Ms. Arias was not
> a certified interpreter, but she had no involvement with the
> shootings and no personal knowledge of what had occurred.
> Defendant complains that it was reversible error to permit the
> English translation of Sofia's statement to be utilized at trial.  The
> transcript reference provided by defendant with respect to this
> argument does not support his contention.

*Green*, 2008 WL 3067920, at *7.

The Supreme Court has observed that improper pretrial identification procedures by police

may cause witnesses to misidentify a criminal.  *See Simmons v. United States*, 390 U.S. 377, 383

(1968).  An identification procedure may be deemed unduly and unnecessarily suggestive if it is

based on police procedures that create "a very substantial likelihood of irreparable

misidentification."  *Id.* at 384.  In that scenario, "the witness thereafter is apt to retain in his

memory the image of the [misidentification] rather than that of the person actually seen, reducing

the trustworthiness of subsequent lineup or courtroom identification."  *Id.* at 383–84.  "It is the

likelihood of misidentification which violates a defendant's right to due process . . . . Suggestive

confrontations are disapproved because they increase the likelihood of misidentification."  *Neil v.

Biggers*, 409 U.S. 188, 198 (1972).

Even if an identification procedure is unnecessarily suggestive, admission of the

suggestive identification does not violate due process so long as the identification possesses

sufficient aspects of reliability, *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977), for reliability is

the "linchpin in determining the admissibility of identification testimony." *Id.* at 114; *see also United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008). The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.'" *Brathwaite*, 432 U.S. at 106 (quoting *Biggers*, 409 U.S. at 199); *see also United States v. Maloney*, 513 F.3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199. Significantly, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. *See Coleman v. Alabama*, 399 U.S. 1, 7 (1970).

Here, although relying on state caselaw, the New Jersey courts correctly identified the controlling legal principles. Their decisions were neither contrary to nor an unreasonable application of controlling federal law. Nor were the state courts' factual determinations unreasonable in light of the evidence presented. The trial court examined Ms. Rodriguez's identification of Petitioner in great depth and found that it was not in any way suggestive and found that it was reliable. Moreover, Petitioner has not shown that Ms. Rodriguez's cousin acting as an interpreter in any way affected the identification or otherwise violated his rights. Petitioner is not entitled to relief on these grounds.

### 5. Witness Appearance (Ground Ten)

In Ground Ten, Petitioner argues that it was a violation of his constitutional rights when

witnesses Latique Mayse and Nepataly Escobar were forced to testify in prison garb and shackles.

(Pet. 13). The Appellate Division denied relief:

> Defendant asserts that two of the witnesses who testified, Latique Mayse and Neptaly Escobar, did so before the jury in prison garb and shackles. This, defendant asserts, severely prejudiced his right to a fair trial. The record does not support defendant's argument. Indeed, the record specifically indicates that both Mr. Mayse and Mr. Escobar (who discovered the cell phones taken in the robbery that defendant had discarded and was using them in connection with his drug trade) were uncuffed before the jury entered the court room. The record does not indicate their attire, but both witnesses freely testified that at their appearances, they were incarcerated.

> We note, moreover, that these two witnesses were called by the prosecution. Any skepticism on the part of the jury about their testimony because of their criminal record would seem to only redound to defendant's benefit.

*Green*, 2008 WL 3067920, at *7.

At the outset, it is unclear what constitutional right Petitioner is alleging has been violated. To the extent Petitioner is relying on state law, as previously stated, "errors of state law cannot be repackaged as federal errors." *Johnson*, 117 F.3d at 110. To the extent Petitioner is relying on the Supreme Court's holding in *Estelle v. Williams*, 425 U.S. 501 (1976), Petitioner's claim fails. In *Estelle*, the Supreme Court held that, when defendants are forced to wear prison garb to trial, the clothing may create a subtle prejudice undermining the presumption of innocence. *See Washington*, 462 F.3d at 1136 (citing *Estelle*, 425 U.S. at 504–05). While a state "cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes," a defendant may waive any objection to being tried in prison garb by failing to object at trial, "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion

necessary to establish a constitutional violation." *Id.* at 512–13. However, it is only a state's compulsion that is prohibited, and not the wearing of prison garb in general, because defendants sometimes use prison garb as a tactic to elicit sympathy from the jury. *See id.* at 508. The Supreme Court has similarly recognized that due process precludes the use of visible physical restraints upon a defendant "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343–44 (1970)).

The Supreme Court, however, has never held that the prohibition on compelling a defendant to wear prison garb applies to witnesses. Moreover, no extension of the prohibition to witnesses follows from the reasoning of the relevant Supreme Court decisions. The Supreme Court in *Deck* and *Estelle* reasoned that the principal interest protected by the Due Process Clause is the presumption of innocence accorded criminal defendants (*see Deck*, 544 U.S. at 630; *Estelle*, 425 U.S. at 503), but this concern is wholly inapplicable to witnesses (either facially or in that defendants are not entitled to a presumption that their witnesses, or witnesses for the State, are innocent). *See McMannis v. Mohn*, 254 S.E.2d 805, 811 (1979) ("A criminal defendant has no constitutional right to have his witnesses appear at trial without physical restraints. . . .").

Even if this Court were to conclude that the issue of a witness in prison garb could qualify as a constitutional violation, the errors alleged by Petitioner were harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Harmless error analysis has been applied to

claims involving the use of prison clothing and shackles. *See Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005); *United States v. Martin*, 964 F.2d 714, 721 (7th Cir. 1992). Here, the State's witnesses wearing prison garb did not prejudice Petitioner nor could have had a substantial effect on the jury's verdict since the criminal records of the two witnesses were provided to the jurors in the course of their testimonies. "No prejudice can result from seeing that which is already known." *Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973); *see also United States v. Brooks*, 125 F.3d 484, 499 (7th Cir. 1997) (witness's testimony about her convictions and prisoner status dispelled any prejudice arising from her prison garb); *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993) (citing cases and finding no prejudicial error arising from co-defendants testifying in prison clothes); *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992). Moreover, as discussed by the state court, the witnesses appearing in prison garb were witnesses for the State and as such, would have only had an injurious effect on the State's case. Hence, any error in having State's witnesses appear in prison garb was harmless, and habeas relief is not warranted on this basis.

**6. Ineffective Assistance of Counsel (Grounds Thirteen through Seventeen; Twenty and Twenty-One)**

In Grounds Thirteen through Seventeen, Twenty and Twenty-One of the Petition, Petitioner alleges various claims of ineffective assistance of trial counsel, appellate counsel and PCR counsel.[1] Petitioner alleges the following specific errors:

---

[1] Infirmities in a state PCR proceeding generally do not raise constitutional questions in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954; *see also* 28 U.S.C. § 2254(i) (the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a

- Trial counsel failed to retain and present expert witnesses to challenge the ballistics evidence and the letter allegedly written by Petitioner;
- Trial counsel failed to object to a "clear" *Brady* violation;
- Trial counsel failed to object to Ms. Rodriguez's claim that she could not speak English;
- Trial counsel failed to investigate the crime scene;
- Trial counsel failed to bring to the attention of the jury the scars on Petitioner's face which would have refuted the witness identification;
- Trial counsel failed to investigate Carlos Moore as a possible suspect in the alleged crimes;
- Trial counsel failed to challenge the chain of custody of the letter found in Narik Wilson's apartment;
- Trial counsel failed to investigate the victim's cousin whom was used as an interpreter for Ms. Rodriguez;
- Trial counsel failed to object to Mr. Mayse and Mr. Escobar testifying while dressed in prison garb;
- Trial counsel failed to object to other crimes evidence provided by Mr. Mayse;
- Trial counsel failed to investigate that Mr. Mayse "had defendant arrested in the past and then had the charges dropped;"
- Trial counsel failed to object to the state's closing argument which bolstered the testimony of Mr. Mayse;
- Trial counsel was "conflicted" because Petitioner had filed an ethics complaint against him and tried to get him removed as counsel prior to trial;
- Trial counsel failed to challenge the contradictions in Ms. Rodriguez's identification of Petitioner, after she initially said she could not make an identification;
- Appellate counsel failed to raise the claims Petitioner raised in his PCR petition on direct appeal, which led to the procedural default of the claims;
- Trial counsel failed to challenge evidence allegedly discovered by Sergeant Ferrante on the grounds of evidence tampering, impersonation of a law enforcement officer and tampering with a crime scene because he was with the Department of Corrections, not a police department;
- Trial counsel failed to request a cross-racial identification jury charge;
- Trial counsel failed to call or investigate several witnesses on Petitioner's behalf;

(Pet. 16-20; *see generally* D.E. No. 6, Pet'r's Mot. to Stay).

---

proceeding arising under section 2254"). *But see Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012) (holding that a prisoner may establish cause for the procedural default of an ineffective assistance of counsel claim by demonstrating that his or her counsel in an "initial-review collateral proceeding" provided ineffective assistance of counsel, thus creating a narrow exception to the rule set forth in *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991), that an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default). Therefore, Petitioner's challenges based on ineffectiveness of PCR counsel have no merit and are denied for failure to assert a violation of his federal rights.

With regard to the handwriting and ballistics experts, the Appellate Division stated the following on direct appeal:

> The final argument in defendant's pro se brief is that he received the ineffective assistance of trial counsel based upon the failure of the attorneys who represented him at trial to retain either a ballistics expert to counter the testimony of Detective Alarcon or a handwriting expert to refute the inference that defendant was the author of the redacted letter we set forth earlier in this opinion.
>
> There are two prongs to the test whether a defendant's attorney provided ineffective assistance at trial: whether the performance of the attorney was indeed deficient and whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L. Ed.2d 674, 698 (1984); *State v. Fritz*, 105 N.J. 42, 52 (1987).
>
> Defendant makes no showing that such reports were available and thus cannot satisfy the *Strickland* standard.

*Green*, 2008 WL 3067920, at *11. The Appellate Division further addressed the issue of a handwriting expert on appeal from the PCR court's decision:

> There was nothing before the PCR judge demonstrating a likelihood that a handwriting expert would be retained, or, more importantly, that he would render a favorable report.
>
> Indeed, in his pro se appendix, defendant has included a letter from PCR counsel dated September 29, 2009, one week before oral argument on the petition. In that letter, PCR counsel advises, "It seems that the PD is not agreeing to an expert on the handwriting as the samples you provided were inconclusive as to whether or not they could be compared . . . ." In another letter dated one month earlier, PCR counsel offered his lay opinion that the writing on the letter "could be your writing."
>
> Moreover, the PCR judge decided that in the event defendant obtained a report, he could file a subsequent petition "under the rubric of newly discovered evidence." We note that a second PCR petition is cognizable if filed within one year of "the date on which the factual predicate for the relief sought was discovered, if that

factual predicate could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22–12(2)(B). We discern no prejudice to defendant by the denial of the requested adjournment. . . .

For the reasons already discussed, PCR counsel was not ineffective for failing to marshal all defendant's claims, nor were trial, appellate or PCR counsel ineffective for failing to secure a handwriting expert.

*Green*, 2012 WL 75113, at *4-6. The remaining claims of ineffectiveness of counsel were also addressed on PCR:

The claims that trial and PCR counsel failed to adequately investigate the case by securing Rodriguez's medical records, Ivery's criminal history, or inquiring about possible favorable treatment provided by the State to Ivery are either bald assertions, *Cummings*, *supra*, 321 N.J. Super. at 170, or actually belied by the trial proceedings. The same is true of defendant's claim in Point V of his pro se brief regarding the ineffective assistance of all counsel in securing pre-trial discovery.

Points IV, VI, VII, VIII, and XI of defendant's pro se brief raise issues that were addressed and decided on direct appeal. R. 3:22–4(a); *see Green I*, *supra*, at (slip op. 8–14, 18–27) (addressing the prison garb issue, the identification testimony, the expert ballistic testimony, the claim of cumulative error, and the alleged conflict of interest regarding the interpreter).

The claim made in Point IX that trial counsel provided ineffective assistance by failing to argue the prosecutor committed misconduct during his summation could have been raised on direct appeal but was not. R. 3:22–5. To the extent defendant now argues both appellate and PCR counsel were ineffective for failing to raise the issue, the argument lacks any merit. The prosecutor's remarks were legitimate comments on the evidence. *See e.g.*, *State v. Morais*, 359 N.J.Super. 123, 131 (App. Div.) (prosecutor may respond to defense counsel's arguments as long as comments "do not stray beyond the evidence"), *certif. denied*, 177 N.J. 572 (2003).

Lastly, the claim raised in Point X could have been made on direct appeal, but was not. R. 3:22–5. Defendant contends all counsel were ineffective because they failed to either adequately cross-examine Mayse or investigate his potential bias. Defendant has failed to demonstrate how the evidence of prior accusations Mayse made

> against him that were subsequently dismissed, if disclosed to the
> jury, would have altered the result of the trial.

*Green*, 2012 WL 75113, at \*5-6.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt." *Id*. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The *Strickland* test for effective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). According to *Smith v. Robbins*, 528 U.S. 259 (2000), when the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first *Strickland* prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably]

nonfrivolous issues and to file a merits brief raising them." 528 U.S. at 285. An arguably nonfrivolous issue is "one that counsel can argue in good faith with some potential for prevailing." *Id.*

Petitioner's ineffective assistance of counsel claims are all without merit as Petitioner has failed to show any prejudice that has resulted. As discussed above, Petitioner raised the majority of his ineffective assistance of counsel arguments in his PCR petition and the state courts denied him relief. With regard to those claims, the state courts properly applied the relevant Supreme Court precedent and found that Petitioner had not been denied effective assistance of counsel. Petitioner failed to establish that it was objectively unreasonable for trial counsel not to obtain handwriting and ballistics experts to testify. More importantly, the courts found that Petitioner had failed to show prejudice from the decision not to obtain experts as it is unclear whether the reports would have been favorable. *Green*, 2012 WL 75113, at *3. Furthermore, even if they had been favorable, Petitioner failed to show that as a result of the reports, the jury would have had a reasonable doubt respecting guilt. The state courts also properly found that the claims regarding the "clear *Brady* violation," the failure to object to witness testimony and identification and pre-trial discovery were unsupported or belied by the record. *Id.* at *5. Additionally, as properly found by the Appellate Division on direct appeal and discussed by this Court, trial counsel did not render ineffective assistance by failing to object or raise a claim with regard to the prison garb, the identification testimony, the alleged conflict of interest regarding the interpreter and the state's closing argument since those issues are without merit. The state court also properly denied Petitioner's claim regarding counsel's failure to cross-examine Mr. Mayse about potential conflicts as it is unclear how said cross-examination would have affected the verdict. Petitioner's

argument regarding the filing of an ethics complaint against trial counsel is similarly without merit as counsel's performance is measured using the *Strickland* standard, regardless of whether Petitioner filed a complaint.

Petitioner alleges that trial counsel was ineffective for failing to challenge evidence allegedly discovered by Sergeant Ferrante based on the fact that he was a Department of Corrections officer and not associated with any police department. However, Petitioner has not established how failure to do so caused him any prejudice or that the failure to do so likely affected the outcome of the trial. Petitioner alleges that trial counsel was ineffective for failing to request a cross-racial identification jury charge, however, it is clear from the record that the trial court gave such a charge. (*See* D.E. No. 17-11, Ex. 38 to Resp'ts' Br. (11/10/05 Trial Tr. 72:22-77:8)). Petitioner alleges that counsel was ineffective for failing to call or investigate several witnesses on his behalf; however, he fails to state who the witnesses are, what they would have testified about and how said testimony would have been likely to alter the outcome of his trial. Finally, since the alleged errors that Petitioner raises have been found to be without merit, it was not ineffective assistance of appellate counsel for failing to raise said claims.

This Court finds that Petitioner has failed to meet the two prongs required under the *Strickland* test to establish ineffective assistance of counsel. The state courts' adjudication of these claims did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### 7. Prosecutorial Misconduct (Ground Eighteen)

In Ground Eighteen of the Petition, Petitioner argues that the prosecutor committed misconduct when he "knowingly use[ed] the Mayse case as other crimes evidence"; when he stated that Ms. Ivery "changed her story because she was afraid of [Petitioner]"; and when he stated that Mr. Mayse "changed his story because he did not want to help people that put him in prison." (Pet. 17). Petitioner raised the prosecutorial misconduct argument in his PCR petition, under the rubric of ineffective assistance of counsel, where it was rejected by the Appellate Division:

> The claim made in Point IX that trial counsel provided ineffective assistance by failing to argue the prosecutor committed misconduct during his summation could have been raised on direct appeal but was not. R. 3:22–5. To the extent defendant now argues both appellate and PCR counsel were ineffective for failing to raise the issue, the argument lacks any merit. The prosecutor's remarks were legitimate comments on the evidence. *See e.g., State v. Morais*, 359 N.J. Super. 123, 131 (App.Div.) (prosecutor may respond to defense counsel's arguments as long as comments "do not stray beyond the evidence"), *certif. denied*, 177 N.J. 572 (2003).

*Green*, 2012 WL 75113, at *6.

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Wainright*, 477 U.S. 168, 182-83 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht*, 507 U.S. at 638. A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial,

assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

A prosecutor is given wide latitude during closing arguments to ask the jury to draw inferences based on the evidence. *See United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). Viewing the prosecutor's comments regarding Mr. Mayse, (D.E. No. 17-10, Ex. 37 to Resp'ts' Br., (11/9/05 Trial Tr. 110:3-14)), and Ms. Ivery, (*id.* at 135:1-25), in the context of the entire summation and trial, the Court finds that the prosecutor's comments were not an inappropriate characterization of the evidence and did not rise to the level of prosecutorial misconduct. *See Gov't V.I. v. Edwards*, 233 F. App'x 167, 173-74 (2007). With regard to prosecutorial misconduct based on the introduction of other crimes evidence, as stated above, that admission was proper under state law and as such, not misconduct. Petitioner is not entitled to relief on this ground.

### 8. Judicial Misconduct (Ground Nineteen)

In his nineteenth ground for relief, Petitioner argues that the trial judge committed misconduct when "Defendant was denied speedy trial rights in the Mayse case;" when the court "unnecessarily allowed heightened security without conducting a hearing on the issue;" and because there was "inappropriate conduct between the court officer and juror Ebony Smith during the trial. Also state witness and juror Ebony Smith knew each other." (Pet. 17-18).[2] Petitioner does not provide any further information on these vague allegations.

In order to demonstrate judicial misconduct for purposes of habeas relief, a petitioner must show "actual bias" and that he was treated "unfairly" by the trial judge. *See Marshall v.*

---

[2] Petitioner does not provide any further information on these vague allegations and the Court is unable to determine what "inappropriate conduct" Petitioner is alleging to have occurred between Ms. Smith and a court officer.

*Hendricks*, 103 F.Supp.2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 307 F.3d 36 (3d Cir. 2002) (citation omitted).   Adverse rulings on motions and objections are not sufficient to prove judicial bias.   *See id.* (citation omitted).   Rather, "there must be an extremely high level of interference, by the trial judge which creates a pervasive climate of partiality and unfairness."   *Id.* (citation omitted).   "A mere allegation or the mere appearance of bias does not establish bias." *Id.* (citation omitted).

In this case, a review of the record reveals no bias on the part of the trial judge.   There is no evidence of a speedy trial violation nor is it clear how a violation in the Mayse trial would be relevant in this case.   Further, there is no indication that the additional security was based on an "actual bias" by the trial judge nor is there is any indication that there was inappropriate conduct between a court officer and a juror.   With regard to the allegation that one of the jurors knew one of the witnesses, Respondents state in their Answer that there had been an allegation that Juror Ebony Smith knew Ms. Ivery, which turned out to be a false because Ms. Smith had never seen or spoken to Ms. Ivery.   (Respt's Answer 38; Trial Tr. 17T, D.E. No. 10.)   There is simply no evidence in the record of interference, partiality or unfairness by the judge.   Petitioner is not entitled to relief on this claim, as he has not demonstrated a constitutional violation or other grounds for habeas relief.

**9.   Cumulative Errors (Ground Five)**

In Ground Five, Petitioner argues that the cumulative errors mandate that his conviction be reversed.   (Pet. 10).

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *See Hein v.*

*Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (relying on *Donnelly*, 416 U.S. at 643); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

As discussed above, this Court, along with the state courts, finds that there is no merit to Petitioner's claims for individual errors. As such, there is no basis or merit for habeas relief based upon an alleged accumulation of errors that did not exist.

## 10.   Motion to Stay

In his reply to Respondent's opposition to his request for a stay, for the first time, Petitioner identifies three claims which he states he plans to raise in state court: (1) trial counsel failed to file a motion to dismiss regarding violation of Petitioner's right to a speedy trial under the Interstate Agreement on Detainers; (2) trial counsel should have objected to the introduction of the letter because the search of Mr. Wilson's apartment was conducted without a warrant; (3) trial counsel failed to move to have Ms. Ivery's testimony impeached based on the fact that she lied about her legal guardian when she was interviewed as a minor. (D.E. No. 18., Pet'r's Reply to Opp'n to Stay 2-3). Petitioner did not raise these claims in his petition, nor has he sought permission to amend his petition to add these claims.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust [ ] the remedies available in the courts of the State," unless "there is an absence of available State corrective process [ ] or . . . circumstances exist that render such process ineffective." 28 U.S.C. §

2254(b)(1); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Heleva v. Brooks*, 581 F.3d 187, 190 (3d Cir. 2009). The courts of a state must be afforded the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. *See Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012); *see also Rose*, 455 U.S. at 516-18; *Leyva v. Williams*, 9504 F.3d 357, 366 (3d Cir. 2007). Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. *See Rose*, 455 U.S. at 519; *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

Further, to satisfy the exhaustion requirement, a petitioner must fairly present all of his federal claims to the state's highest court before proceeding in federal court. *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). The petitioner bears the burden of proving all facts establishing exhaustion. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. *Rose v. Lundy*, 455 U.S. at 522; *Banks v. Horn*, 126 F.3d 206, 212-14 (3d Cir. 1997). However, because the one-year statute of limitations enacted by the AEDPA[3] is not statutorily tolled by the premature filing of a federal habeas petition, *see Duncan v. Walker*, 533 U.S. 167 (2001), federal courts sometimes may stay § 2254 habeas proceedings to permit prisoners to exhaust state claims. "Staying a habeas petition pending

---

[3] Title 28 U.S.C. § 2244(d)(1)(A) provides for a one-year period of limitations from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, subject to various statutory and equitable tolling considerations.

exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004) (referencing petitions containing both exhausted and unexhausted claims); *see also Heleva*, 581 F.3d at 187 (holding that a petition could be eligible for stay even where only unexhausted claims are asserted). Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness on a collateral attack, a stay is the only appropriate course of action." *Crews*, 360 F.3d at 154.

Thus, district courts "ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion." *Ryan v. Gonzales*, 133 S.Ct. 696, 708 (2013) (quoting *Rhines v. Weber*, 544 U.S. 269, 276 (2005)). The Supreme Court held that a district court has discretion post-AEDPA to stay a mixed habeas petition (containing some claims that have not been exhausted in the state courts) to allow the petitioner to present his previously unexhausted claims to the state court in the first instance, and then to return to federal court for review of his exhausted petition (without being time-barred). *See Rhines*, 544 U.S. at 277. While AEDPA "does not deprive district courts of [this] authority . . . it does circumscribe their discretion. Any solution to this problem must . . . be compatible with AEDPA's purposes." *Id.* at 276. In addition, where a stay is warranted, a district court "should place reasonable time limits on a petitioner's trip to state court and back," since "[w]ithout time limits [on stays], petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." *Id.* at 277-78.

In line with AEDPA's purposes, the Supreme Court held that a stay and abeyance should be available only in limited circumstances. Stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first

in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless, or petitioner engaged in intentionally dilatory litigation tactics.  *Rhines*, 544 U.S. at 277-78.

Petitioner has not provided this Court with good cause for failure to exhaust his ineffective assistance of counsel claims regarding the speedy trial claim, failure to obtain a search warrant and failure to impeach Ms. Ivery's testimony in state court before filing this habeas petition.  All of these claims should or could have been known to Petitioner at the conclusion of his trial. Petitioner has also offered no evidence suggesting that the allegedly unexhausted claims are potentially meritorious.  Most significantly, however, Petitioner cannot show that he was diligent in pursuing these claims as he did not even include them in his second PCR petition which he recently filed in state court and which is still pending on appeal there.  As such, Petitioner requests a stay so he can exhaust his ineffective assistance of counsel claims regarding denial of a speedy trial, failure to obtain a search warrant and failure to impeach Ms. Ivery's testimony is denied.[4]

With regard to the remainder of the claims which Petitioner alleges are unexhausted and for which he requests a stay, the Court notes that the claims appear to be identical to claims already exhausted and to the extent they are not, as discussed above, the Court has denied them on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Carrascosa v. McGuire*, 520 F.3d 249, 255 n. 10 (3d Cir. 2008)

---

[4] The Court notes that it is unnecessary to ask Petitioner whether he wishes to delete these three unexhausted claims and proceed with his petition "as is" because the claims are not raised in the current petition.  Petitioner raises these claims for the first time in his reply brief.

("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . . Denying an unexhausted claim on the merits is consistent with the statute"); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.

_s/Esther Salas_____
**Esther Salas, U.S.D.J.**